# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JULIE MADSEN,<br><br>    Plaintiff,<br><br>v.<br><br>IDAHO EMERGENCY PHYSICIANS, P.A., and DAVID KIM, MD.<br><br>    Defendants. | No. CV-08-243-S-EJL-LMB<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court is Defendants' Idaho Emergency Physicians, P.A. ("IEP") and David Kim's Motion for Summary Judgment (Docket No. 25) against Plaintiff Julie Madsen. The Court grants Defendants' Motion for Summary Judgment. Specifically, this Court finds that Plaintiff's federal claims are time-barred and declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims.

## BACKGROUND

Plaintiff Julie Madsen is a medical doctor, board-certified in emergency medicine, and licensed to practice in Idaho. Plaintiff began work for Defendant

IEP in February 2002 as an emergency department physician.  At the same time, Plaintiff continued her employment as the medical director for Canyon County Paramedics and Northwest Paramedics.  IEP is a group of emergency medicine physicians that contract with Saint Alphonsus Regional Medical Center to provide emergency department services.  Defendant David Kim is also a physician for and shareholder of IEP.  In March 2003, Plaintiff became a shareholder in IEP and signed a shareholder agreement.  Among other things, IEP shareholders are required to work full-time and to pay for certain benefits if they do not meet the full-time hourly requirements.

In January 2004, Plaintiff became pregnant with twins.  Plaintiff stopped working in July 2004 because of pregnancy complications.  Plaintiff was on maternity leave from September 2004, when her children were born, through December 31, 2004.  Plaintiff returned to work for IEP on January 1, 2005.   After returning to work for IEP, Plaintiff did not meet her full-time hourly requirements.  Plaintiff was suffering from then-undiagnosed post-partum depression.  As a result of Plaintiff's failure to meet hourly requirements, IEP required Plaintiff to pay for some of the benefits that IEP had provided when Plaintiff did not work full-time.

In late 2005, Plaintiff requested part-time employment, which IEP denied.  Plaintiff requested a leave of absence in December 2005.  Plaintiff's leave of

2

absence began on January 1, 2006 and ended on July 1, 2006. The IEP scheduling process occurs in six-month intervals, the next of which did not start until October 2006. Given IEP's schedule, Plaintiff could not be assured of a full-time schedule until October 2006. On July 14, 2006, Plaintiff resigned as an IEP shareholder but not as an IEP employee. Plaintiff never returned to work for IEP.

Plaintiff argues that IEP engaged in unlawful employment practices by discriminating against Plaintiff because of her gender and disability, and by retaliating against Plaintiff when Plaintiff voiced her concerns and sought help for her disability. Specifically, Plaintiff argues that IEP did not permit her to return to work after her leave of absence, that IEP did not give her "shift relief" for hours worked outside IEP that IEP had given to other male physicians, that IEP required her to pay for benefits during her 2004 medical leave of absence, and that IEP disseminated information about her leave of absence outside IEP.

Plaintiff filed a charge with both the Equal Employment Opportunity Commission ("EEOC") and the Idaho Human Rights Commission ("IHRC") on January 22, 2007. *Am. Compl.*, ¶ 5 (Docket No. 2).

Plaintiff raises the following claims against Defendants:

(1) Against Defendant IEP, Plaintiff alleges gender discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and the Idaho Human Rights Act

3

("IIHRA"). Specifically, Plaintiff alleges both disparate treatment and hostile work environment claims. *Compl.* ¶¶ 28–33.

(2) Against Defendant IEP, Plaintiff alleges retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a) and IHRA, Idaho Code § 67-5911. *Compl.* ¶¶ 34–42.

(3) Against both Defendants IEP and Kim, Plaintiff alleges intentional and/or negligent infliction of emotional distress because of Defendants' alleged violations described in claims (1) and (2). *Compl.* ¶¶ 42–49.

(4) Against both Defendants IEP and Kim, Plaintiff alleges that Defendant Kim maliciously spread rumors about Plaintiff, including that Plaintiff was faking her post-partum depression. *Compl.* ¶¶ 50–57.

(5) Against Defendant IEP, Plaintiff alleges wrongful discharge because Defendant IEP constructively terminated Plaintiff because of her gender and in retaliation. *Compl.* ¶¶ 58–64.

(6) Against Defendant IEP, Plaintiff alleges disability discrimination under the ADA based on her post-partum depression and because Defendant IEP failed to reasonably accommodate her disability, retaliated by constructively discharging her, and treated her differently because of her disability. *Compl.* ¶¶ 65–74.

**DISCUSSION**

I.  Summary Judgment Standard

A district court may grant summary judgment if "there is no genuine issue as to any material fact" and "the movant is therefore entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c)(2). A dispute about a material fact exists if a reasonable jury could decide in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Once the moving party demonstrates the absence of a genuine issue of material fact, the nonmoving party that bears the ultimate burden at trial must show that there is evidence creating a genuine issue of material fact." *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986)).

A district court must view all evidence submitted for a summary judgment motion "in the light most favorable to the [non-movant], drawing all reasonable inferences in [the non-movant's] favor." *Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 568 (9th Cir. 2004) (citations omitted). Moreover, a district court may not make credibility determinations in ruling on a summary judgment motion. *Anderson v. Liberty Lobby*, 477 U.S. at 255.

II.  Statement of Undisputed Facts

Plaintiff's federal claims are supported by the following facts. Plaintiff did

not receive shift relief, i.e., hourly credit toward full-time requirements, for hours worked outside IEP for Canyon County Paramedics. IEP had previously approved four positions for shift relief, most of which were held by males. Plaintiff requested shift relief from IEP's Executive Committee for her work with Canyon County Paramedics but withdrew her request on August 28, 2005.[1] *Klein Aff.*, Exh. B, (Docket 26-7, SEALED).

IEP shareholders are required to work 30 clinical hours per week. If a shareholder's yearly average is between 19.5 and 25.5 hours per week, the shareholder pays 50% of the cost of their benefits. If the shareholder's yearly average is less than 19.5 hours, the shareholder pays 100% of the cost of their benefits. In 2004, Plaintiff's yearly average fell below 25.5 hours. Plaintiff and IEP agreed that Plaintiff would only pay 50% of her benefits cost for the months of October through December 2004. Plaintiff paid for these benefits through payroll deductions in March and May 2005.

Plaintiff asserts that she did not authorize the March 2005 payroll. A March 18, 2005 email from Plaintiff indicates a payment preference. *Peterson Aff.*, Exh. O, (Docket 26-11, SEALED).

---

[1] Plaintiff also appears to argue that she was forced to withdraw the request for shift relief, but no evidence supports this assertion.

In March 2005, Plaintiff's 2005 average fell below 19.5 hours per week. During the spring of 2005, the parties discussed Plaintiff's scheduling options, including a leave of absence and giving up shareholder status so that Plaintiff could work part-time, during which time Plaintiff would be required to pay for her benefits. Plaintiff's six-month leave of absence began on January 1, 2006. In January 2006, IEP removed Plaintiff from IEP' board of directors and put in place a proxy voter.

IEP requested back-to-work information from Plaintiff in the spring of 2006. Specifically, Plaintiff and IEP's Executive Committee met on March 14, 2006. Plaintiff and IEP agreed to a May 1, 2006 deadline to return the paperwork. They also discussed Plaintiff's committee work; IEP was in favor of Plaintiff' participation. *Young Aff.*, Exh. M (Docket No. 26-19, SEALED).

Plaintiff did not attend any other IEP committee meetings during her leave of absence, except an Executive Committee meeting on June 7, 2006. At the June 7, 2006 Executive Committee meeting, Plaintiff and IEP discussed Plaintiff's benefits upon coming back to work for IEP. They also discussed how Plaintiff's personal information regarding her leave of absence had been disseminated outside IEP. Plaintiff requested IEP's action but did not disclose the names of those who had disseminated her private information.

Plaintiff alleges that at some point prior to the June 7, 2006 meeting, Defendant David Kim specifically, and unnamed others, disseminated personal information about her in the spring of 2006, which Defendant Kim denies. With the following exceptions, no other evidence indicates that IEP or one of its physicians disseminated Plaintiff's personal information: (1) Julie Klein, who is IEP physician Fred Klein's wife, admitted to speaking with her husband about Plaintiff's medical condition and possible leave of absence in late 2005. Julie Klein testified that she "never repeated" this information. She had worked at Ada County Paramedics. *Klein Aff.*, ¶¶ 2–5 (Docket No. 26-8, SEALED). (2) Nikki Rota testified to hearing rumors about Plaintiff's leave of absence and medical condition in early 2006 while at work for Ada County Paramedics. (3) Lee Binnion, another IEP physician, admitted speaking with a nurse about Plaintiff's medical leave of absence.

The IEP scheduling process occurs in six-month intervals. After Plaintiff's leave of absence in 2006, the next scheduling interval began in October 2006, approximately three months after Plaintiff's scheduled return to work. Plaintiff did not submit requested scheduling preferences for the schedule beginning in October 2006. IEP did not place Plaintiff on the October 2006 schedule. On July 14, 2006, Plaintiff resigned as an IEP shareholder but not as an IEP employee. Plaintiff

never returned to work for IEP.

III. Discussion

A. Statue of Limitations

Pursuant to 42 U.S.C. § 2000e-5(e), an aggrieved person must file a charge with the EEOC within 180 days "after the alleged unlawful employment practice occurred," or within 300 days after the alleged unlawful employment practice if the person "initially instituted proceedings with a State or local agency." 42 U.S.C. § 2000e-5(e)(1). In order to maintain an action under Title VII, 42 U.S.C. § 2000e, et seq., an aggrieved person must first file with the EEOC. *See Wiltshire v. Standard Oil Co. of Cal.*, 652 F.2d 837, 838–39 (9th Cir. 1981) (assuming that a timely EEOC filing is a prerequisite to filing a Title VII action in district court).

In *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002), the Supreme Court held that a plaintiff's Title VII claim is barred to the extent that "discrete acts of discrimination or retaliation . . . occur outside the statutory time period." *Nat'l R.R.*, 536 U.S. at 105. A plaintiff's hostile work environment claim is, however, "permissible for the purposes of assessing liability, so long as an act contributing to that hostile work environment claim takes place within the statutory time period." *Id.* Equitable doctrines "may either limit or toll the time period within which an employee must file a charge." *Id.*

Here, Plaintiff filed a charge of an unlawful employment practice with both the EEOC and the IHRC on January 22, 2007. The longer 300-day time limit is inapplicable here because the Plaintiff filed with both entities on the *same* day; she did not initially file with the IHRC. *See* 42 U.S.C. § 2000e-5(5). Therefore, the alleged unlawful employment practices in this case must have occurred between July 26, 2006 and January 22, 2007.

None of the events Plaintiff points to as evidence for her claims occurred on or after July 26, 2006. In the context of Plaintiff's wrongful termination claim, Plaintiff also cursorily argues that she "was constructively discharged . . . from her employment because of her disability, gender, and/or filing of an Idaho Human Rights Commission Charge of Discrimination." *Summ. J. Resp.*, at 19 (Docket No. 43). Plaintiff also asserts that "IEP claims [Plaintiff's] employment simply continued, and did not officially end until she filed a charge of discrimination with the Idaho Human Rights Commission in January 2007." *Pl. Statement Facts*, at 16 (Docket No. 43-1, SEALED).

Plaintiff's retaliation claim described in the Complaint does not mention IEP's conduct after Plaintiff filed a claim with the EEOC and IHRC. If the Court assumes that Plaintiff's belated assertion is an attempt to amend her complaint, that the Court accepts this amendment, and that IEP dismissed Plaintiff for filing with

10

the IHRC and EEOC, the Court would find that Plaintiff's retaliation claim is not time-barred.

The evidence Plaintiff relies on, however, does not support her assertion that IEP terminated her employment after Plaintiff filed with the EEOC and IHRC. Plaintiff points to the deposition of Thomas Peterson, IEP's Executive Director. In this deposition, Peterson stated that Plaintiff "was never terminated from IEP and basically self-terminated upon filing [with the Idaho Human Rights Commission], and never responded to any of our requests for information that would have allowed us to bring her back to work." *Fischer Aff.*, Exh F., Peterson Depo., 46:13–18 (Docket No. 41-6, SEALED). Plaintiff does not point to any other evidence nor can the Court find any that would support Plaintiff's retaliation claim based on her IHRC and EEOC filings.

The Court therefore dismisses as time-barred Plaintiff's Title VII claims of discrimination and retaliation based on gender and disability.

B.  State Law Claims

Pursuant to 28 U.S.C. § 1367, a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, it is "within a district court's discretion . . . to retain jurisdiction to adjudicate the [supplemental]

11

state claims." *Harell v. 20th Century Ins. Co.*, 934 F.2d 203, 205 (9th Cir. 1991) (citations omitted).

Here, the Court's dismissal of all of Plaintiff's federal claims leaves this court without subject matter jurisdiction over Plaintiff's remaining state-law claims. As an exercise of this Court's discretion, the Court, dismisses without prejudice Plaintiff's remaining state-law claims.

## ORDER

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment is GRANTED with prejudice with respect to Plaintiff's Title VII claims of discrimination and retaliation, and GRANTED without prejudice with respect to Plaintiff's state-law claims under the IHRA and Plaintiff's claims of slander, wrongful termination, and intentional and/or negligent infliction of emotional distress.

DATED: **March 23, 2010**

Honorable Edward J. Lodge
U. S. District Judge